**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ERNEST M. GUTIERREZ,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-07-392** |
| | § | |
| **NATHANIEL QUARTERMAN, Director** | § | |
| **Texas Department of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**<u>MEMORANDUM AND RECOMMENDATION</u>**

Petitioner is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Havis Unit in Brownwood, Texas.  The actions about which he complains occurred in Nueces County, Texas.  Proceeding *pro se* and *in forma pauperis*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on October 9, 2007 (D.E. 1).  The underlying conviction which is the subject of the petition is a 2004 Nueces County conviction for the offense of possession of a controlled substance (cocaine).  Petitioner claims that his constitutional rights were violated during the trial and appellate process and in particular claims that he was subjected to an illegal search and seizure in violation of the Fourth Amendment.  On January 9, 2008 respondent filed a motion for summary judgment to which petitioner responded on February 4, 2008 (D.E. 11, 13).

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Petitioner was convicted in Nueces County, Texas.  28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

**A.  Factual Background**

The parties in this case gave vastly different descriptions of the events leading up to the search of his house and the seizure of drugs and other evidence.  The issue of the voluntariness of the search was litigated in a pretrial motion to suppress and also at trial.

**1.  Officers' Testimony**

At the suppression hearing, Detective Douglas Rush testified that he was asked to go to petitioner's house to investigate a case involving a stolen laptop computer (2 S.F. 6).[1]  Rush had reason to believe that the computer would be at petitioner's house (2 S.F. 15-16).  As they were approaching the house, petitioner out the front door and stood on the porch (2 S.F. 6, 17).  The house and front yard were enclosed by a chain-link fence and there were dogs in the yard, but Rush did not feel threatened by the dogs (2 S.F. 18). Rush asked petitioner about the stolen computer and petitioner first denied having it and then later said he had the computer in the house (2 S.F. 6-7).  Rush asked petitioner for consent to enter the house and petitioner agreed.  Rush began to fill out a consent to

---

[1]  "S.F." refers to the Statement of Facts prepared in petitioner's case and is located at D.E. 12, along with the other state court records.

search form while they were still on the porch and then petitioner let them in the house (2 S.F. 7).  Petitioner had suggested that he go get the computer and give it to the officers on the porch, but Rush had said that they would have to accompany him inside to get it (2 S.F. 26).  As soon as they entered the house, Rush saw a half-smoked marijuana cigarette on the coffee table.  Rush's partner, Detective Felix Gonzalez, commented that he had smelled an odor of burning marijuana inside.  Rush also saw a woman and child, later identified as petitioner's wife and daughter (2 S.F. 7).  The consent to search form was signed after the detectives entered the house, smelled the marijuana and saw the half-smoked marijuana cigarette (2 S.F. 33).

A consent to search form was entered into evidence (2 S.F. 9; SX 1).  Rush testified that the consent form was signed by petitioner and witnessed by Rush and a uniformed officer.  Rush denied threatening or coercing petitioner into signing the consent to search form and testified that the consent form was signed prior to conducting the search of the house (2 S.F. 9).  The officers found a substantial amount of cocaine, cash and a pistol in the house.  Upon finding those items, the detectives asked for narcotics officers to come and complete the investigation (2 S.F. 12).

At the trial, Rush's testimony regarding the entry into petitioner's house was consistent with his testimony at the suppression hearing.  He described petitioner as cooperative and said he never asked them to leave.  The detectives did not threaten or coerce petitioner in any way (4 S.F. 53-54).  Petitioner was cooperative, but as a matter of officer safety and policy they could not allow him to go into the house by himself to

3

retrieve the computer (4 S.F. 72-73).  Although the consent to search form was signed by

a uniformed officer named Soliz, the officer did not actually witness petitioner sign the

form.  Rather, Soliz signed the form later, after he arrived at the house (4 S.F. 77-81).

At the trial on the merits Felix Gonzalez ("F. Gonzalez") testified that he

accompanied Rush to petitioner's house.  While they were standing on the porch talking

to petitioner, F. Gonzalez noted the smell of burnt marijuana (4 S.F. 102-104).  He also

noticed that petitioner's eyes were bloodshot and he appeared nervous (4 S.F. 105).  F.

Gonzalez corroborated Rush's story regarding petitioner first denying he had the

computer and then offering to retrieve it for the officers.  He also said that petitioner

consented to the search of his house, although he did not sign the consent to search form

until they all went inside the house (4 S.F. 103-106).  Neither F. Gonzalez nor Rush

threatened or coerced petitioner in any way and petitioner was cooperative and never

asked them to leave the house (4 S.F. 108-109).

When they entered the house F. Gonzalez saw the half-smoked marijuana cigarette

and noticed electrical cords running on the ceiling.  He also saw cash in small

denomination bills on the desk and also a police scanner on the floor (4 S.F. 107).  After

seeing all of those items, F. Gonzalez explained petitioner's Miranda rights to him (4 S.F.

138-139).  F. Gonzalez agreed that, according to the report he made of the incident, he did

not give the consent to search form to petitioner until after he had explained his Miranda

rights and after at least one uniformed officer had arrived (4 S.F. 153-154).  F. Gonzalez

stated that the officers did not enter the house because they smelled marijuana smoke, but

because petitioner gave them permission to enter (4 S.F. 160-161).  At some point petitioner's wife contacted her mother who came and picked up petitioner's daughter (4 S.F. 157-158).

Officer David Gonzalez ("D. Gonzalez") testified that he and Officer Jesse Cervantes were called to petitioner's house as part of a narcotics investigation.  D. Gonzalez said that he told petitioner that they were going to search the house based on the consent form he had already signed and that petitioner was very cooperative and said they could continue to search (4 S.F. 168-169).  During the search of the house the officers found approximately $10,000 in cash, 56 grams of marijuana, 561 grams of cocaine, digital scales, small baggies, surveillance equipment including monitors showing the inside and outside of the house, a police scanner and a gun.  The cash and the gun were found in a safe (4 S.F. 169-170).

### 2.  Petitioner's Testimony

The testimony of petitioner and his wife differed greatly from that of the police officers.  At the suppression hearing petitioner testified that he was smoking a marijuana cigarette in his house when he heard two car doors slam.  He looked out of the window and saw two plain clothes police officers walking toward his house (2 S.F. 48).  He put the cigarette out and went out to the front porch to meet the officers because he did not want them to come close enough to the house to smell the smoke (2 S.F. 48).  The officers were coming through the gate on the chain-link fence and petitioner's dogs came running and barking to the front yard.  One of the officers pulled a gun on the dogs and asked

5

petitioner if the dogs would bite.  Petitioner called the dogs off and the officers started
talking to him (2 S.F. 48-49).

They were talking on the steps of the front porch of the house.  Petitioner had
closed the door behind him because he did not want the officers to smell the marijuana
smoke (2 S.F. 51).  The officers asked him about a laptop computer.  Petitioner was
cooperative but very nervous because he did not want the officers to go inside his house
(2 S.F. 52).  Petitioner told the officers that he had the computer and asked them if they
would leave if he went inside and retrieved it for them and they agreed.  He went inside
his house and tried to close the door but Rush put his foot in the door and forced the door
open with his hands (2 S.F. 52-53).  Petitioner did not give them permission to come in
and did not sign a consent to search form at that time (2 S.F. 53).  Petitioner asked the
officers to leave the house but they would not (2 S.F. 54).  Petitioner grabbed the
computer and gave it to Rush.  F. Gonzalez started walking and looking around the living
room and den (2 S.F. 55).

At that point the officers asked petitioner to sign a consent to search form but he
declined because he had already given them the computer.  Petitioner asked if he could
call an attorney but was told that he could not (2 S.F. 55).  F. Gonzalez saw that
petitioner's pregnant wife and young daughter were in the house and he became angry
that they were in the house with the marijuana smoke.  He said he was going to call Child
Protective Services ("CPS") to come and pick up petitioner's daughter.  The officers also
told petitioner that if he would sign the consent to search form that they would not charge

his wife with any crime and that if he did not sign the consent form they would seize everything in the house, take his wife to jail and his daughter to CPS.  Petitioner asked them if they would allow his wife and daughter to leave if he signed the consent form and they agreed.  They let petitioner's mother-in-law pick up the child but would not let his wife leave (2 S.F. 55-56).  Petitioner did not sign the consent form until after his mother-in-law picked up his daughter (2 S.F. 56-57).  By the time he signed the form the officers had already found the marijuana cigarette in the living room, a bag of marijuana in the back and a bag of money in a drawer (2 S.F. 57).  Petitioner felt like his only option was to consent to the search or risk having his daughter taken away and his wife arrested (2 S.F. 57).  After he signed the consent form the narcotics officers and other police officers arrived and began to search his house (2 S.F. 57).  Petitioner was taken to the police department to give a statement and explained how he came to have the computer, drugs and money.  He was not given an opportunity to talk to an attorney (2 S.F. 57-58).

Petitioner acknowledged that in his statement he said that the officers had asked to search his home and he had agreed but said he did not sign the form until after his daughter left (2 S.F. 62).  He also acknowledged that he had signed a form giving up his right to speak to an attorney before making a statement, but reiterated that he did ask for an attorney but was not allowed to contact one (2 S.F. 64-65).

Petitioner's testimony at the trial on the merits was consistent with his testimony at the motion to suppress.  He testified that he did not invite the officers into his house because he knew they would smell marijuana smoke but that Rush pushed his way inside

7

(5 S.F. 132).  He told them he would not sign a consent to search form and asked them to leave after he retrieved the computer (5 S.F. 133-135).  As soon as he refused to sign the consent form, F. Gonzalez told him that he would have his daughter picked up by CPS and that his wife was going to be charged on a drug offense (5 S.F. 137-138).  At that point he asked if he could call an attorney but the officers would not let him do so (5 S.F. 137-138).  Petitioner agreed to sign the consent form on the condition that the officers let his daughter be picked up by his mother-in-law and not charge his wife with a crime (5 S.F. 139-140).  Petitioner's wife corroborated his version of events at both the suppression hearing and the trial on the merits (2 S.F. 69-88; 5 S.F. 2-31).

## B.  Procedural Background

Petitioner was found guilty by the jury on March 18, 2004 and sentenced to 20 years incarceration in TDCJ-CID and was assessed a $20,000 fine (Tr. 84).[2]  In his appellate brief, petitioner argued that the trial court erred by not suppressing the evidence obtained pursuant to the search of petitioner's house because the consent to search was not voluntary and the consent to search form was not properly executed.  Petitioner also argued that the trial court erred by not allowing the report of Detective F. Gonzalez to be entered into evidence.  Br. of Appellant-Petitioner at 4-18; Gutierrez v. State, No. 13-04-00186-CR (Tex. App.–Corpus Christi, Aug. 25, 2005)(not designated for publication).  In its reply brief, the State argued that the trial court did not err in finding that petitioner

---

[2]"TR" refers to the appellate transcript prepared in petitioner's case.

voluntarily consented to the search.  Br. of Appellee-Respondent at 36-41, Id.  The State also argued that the police had probable cause and exigent circumstances to enter the home.  Br. of Appellee-Respondent at 42-44, Id.  The State also argued that the trial court did not err in not admitting the report of F. Gonzalez into evidence.  Br. of Appellee-Respondent at 45-48, Id.

The Thirteenth Court of Appeals affirmed petitioner's conviction in an unpublished memorandum opinion issued on August 25, 2005.  Gutierrez, slip op. at 5-6 Id. [3]  The court did not address petitioner's argument regarding the voluntariness of his consent, but instead concluded that the police had ample probable cause and exigent circumstances to enter the house.  Id. at 3-6.  Petitioner filed a motion for rehearing with the Court of Appeals on September 9, 2005 and it was overruled on September 21, 2005 (D.E. 12).

Petitioner filed a petition for discretionary review ("PDR") on October 18, 2005. As grounds for review petitioner argued that the Court of Appeals decision identified an area of the law that was not firmly decided in Texas, namely whether the State may rely on a ground for the suppression of evidence not raised in the trial court proceeding. Petitioner also argued that the Court of Appeals erred in deciding that the intrusion into the house was allowable under the theory of exigent circumstances.

---

[3]A complete copy of the opinion is attached to the Petition for Discretionary Review located with the other state court documents in this case.  The stand-alone copy of the Court of Appeals opinion  included in the state court records is missing the even-numbered pages.

The Court of Criminal Appeals agreed to hear the case.  When petitioner briefed the case, he argued only that the Court of Appeals erred when it found that entry into the home was allowable under the theory of exigent circumstances.  Br. of Appellant-Petitioner at 5-10, <u>Gutierrez v. State</u>, 221 S.W.3d 680 (Tex.Crim.App., 2007).  The State responded to the "exigent circumstances" argument, but also asked the Court to "consider in its decision the impact that the question of voluntary consent might have on evaluation of the correctness of the trial court's decision." Br. of Appellee-Respondent at 2, <u>Id.</u>  In its prayer for relief, the State asked the Court of Criminal Appeals to uphold the 13th Court of Appeals judgment on the exigent circumstances ground and, in the alternative, to remand the case to the Court of Appeals with instructions to decide the issue of voluntary consent. Br. of Appellee-Respondent at 5, <u>Id.</u>

On April 25, 2007, the Court of Criminal Appeals issue an opinion in which it determined that the 13th Court of Appeals erred when it decided that the entry into the home was allowable under the theory of exigent circumstances.  The court nevertheless affirmed the conviction on the grounds that the police entry and search were justified by petitioner's consent.  <u>Gutierrez</u>, 221 S.W. 3d at 684-688.  Justice Womack filed a dissenting opinion where he opined that because the 13th Court of Appeals did not consider the issue of consent, it should have remanded the case to the intermediate court, rather than decide the issue.  <u>Id.</u> at 688-689.  Petitioner filed a motion for reconsideration

on May 15, 2007 but it was  untimely and not considered.[4]  (Dkt. Sheet, att. to Mo. for Sum. Jmt., D.E. 11, Ex. A).

Petitioner filed his federal petition on October 9, 2007 arguing (1) that the Texas Court of Criminal Appeals violated his due process rights when it affirmed his case on the theory of consent after finding that the 13th Court of Appeals erred in its probable cause and exigent circumstances analysis and (2) that the State relied on a tainted consent to search form in violation of petitioner's Fourth Amendment right to be free from unlawful search and seizure.

In his motion for summary judgment, respondent argues that petitioner has not exhausted his state court remedies and that his claims are otherwise without merit. Respondent does not argue that petitioner's claims are successive or barred by the statute of limitations.

## DISCUSSION

**A.  Exhaustion**

Respondent argues that petitioner failed to exhaust his claims because he has not presented either of them to the Texas Court of Criminal Appeals.  All claims brought in a federal petition must have been exhausted at the state court level.  See 28 U.S.C. § 2254(b)(1);  Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990).  An applicant shall not be

---

[4]A motion for rehearing may be filed with the Court of Criminal Appeals clerk within 15 days from the date of the judgment or order.  Tex. R. App. Proc. 79.1

deemed to have exhausted his state remedies if he has the right under state law, to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  In addition, an inmate must make a "fair presentation" of his claims, or present them in such a way that their merits will be considered.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### 1.  Due Process Claim based on Court of Criminal Appeals Opinion

Petitioner attempted to present his claim that the Texas Court of Criminal Appeals violated his right to due process by filing a motion for reconsideration after the Court ruled on his PDR, but because the motion was filed late, it was not considered (Dkt. Sheet, att. to Mo. for Sum. Jmt., D.E. 11, Ex. A).  Petitioner could still present this claim to the Texas Court of Criminal Appeals by way of a state habeas action, because he has not yet filed one.  Because the Court of Criminal Appeals has not considered the merits of his claim, and because he has the right, under state law, to raise the claim in a state habeas action, it is not exhausted and this court cannot consider it.  Accordingly it is recommended that petitioner's due process claim based on his argument that the Court of Criminal Appeals should not have affirmed his conviction on the consent theory be dismissed for failure to exhaust.

### 2.  "Tainted Consent" Claim

Respondent also argues that petitioner did not present his claim of "false evidence" to the Texas Court of Criminal Appeals.  Although petitioner uses the phrase "false evidence" in describing one of the grounds he wishes to raise, it appears that he is

reiterating the argument made in the trial court and to the 13th Court of Appeals that he

did not voluntarily consent to the search.  In his instant federal petition, he states:

> Petitioner's Fourth Amendment right was abridged by the state use of false
> evidence.  The state relied on a tainted consent to search form to deny petitioner of
> his Fourth Amendment right to be free from all unconstitutional searches and
> seizures of evidence.  The form of consent relied on erroneously by the Court of
> Criminal Appeals when affirming petitioner's case was tainted.

D.E. 1, p. 7.

Petitioner was represented by counsel when he appealed to the 13th Court of

Appeals and his argument was framed in the following manner:

> The trial court erred by not suppressing evidence obtained in violation of the 4th
> Amendment to the United States Constitution, Article 1 Section 9 of the Texas
> Constitution, and Article 38.23 of the Texas Code of Criminal Procedure.

Br. of Appellant-Petitioner at 4, Gutierrez v. State, No. 13-04-00186-CR.  He went on to

argue that the consent obtained by police officers prior to and after entry was not

voluntary.  Br. of Appellant-Petitioner at 8-12, Id.

The 13th Court of Appeals did not address the issue of consent, but rather decided

the case on a theory of exigent circumstances.  When petitioner, once again represented

by counsel, filed his PDR, he followed the lead of the 13th Court of Appeals and

addressed the issue of exigent circumstances rather than the issue of consent.

Nevertheless, the Court of Criminal Appeals examined and ruled on the issue of consent

to search.  Petitioner is before this court *pro se*, and reading his petition liberally, it

appears that he once again is arguing that he did not voluntarily consent to having his

house searched by police officers.  Because petitioner presented the merits of this claim to

the intermediate appellate court, and because the Court of Criminal Appeals decided to consider and analyze the claim, it should be considered exhausted.  Accordingly, it is recommended that petitioner's "tainted consent" claim not be dismissed for failure to exhaust.

## B.  Merits

Although it is recommended that petitioner's due process challenge to the Court of Criminal Appeals action be dismissed for failure to exhaust, the merits will also be addressed.  28 U.S.C. § 2254(b)(2).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523).  A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect.  Neal, 239 F.3d at 687.  In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence.  "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'"  Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  Garcia v. Quarterman, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  Id.

### 1.  Action by Court of Criminal Appeals

Petitioner argues that the Texas Court of Criminal Appeals violated his due process rights when it affirmed his case on a theory of consent after finding that the intermediate court erred in its probable cause and exigent circumstances analysis. Petitioner has not cited to any authority supporting his argument that the Court of Criminal Appeals violated his due process rights and none was found.  The United States Supreme Court has noted that "[i]n the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937)(citations omitted).  Although the Texas Court of Criminal Appeals could have (and perhaps should have, according to Justice Womack) remanded the case to the intermediate appellate court, as an appellate court it also had discretion to affirm the conviction on a different ground.  Petitioner's argument that the Texas Court of Criminal Appeals violated his due process rights when it affirmed his conviction on a ground not addressed by the 13th Court of Appeals is without merit and should be denied.

### 2.  Tainted Consent to Search Form

Petitioner argues that he did not voluntarily consent to the search of his house and that the items recovered in the search should not have been admitted into evidence (Resp. to Mo. for Sum. Jmt.,  D.E. 13, pp. 2-6).  The Court of Criminal Appeals noted that the issue of consent was contested both at the pretrial hearing suppression hearing and the

16

trial on the merits.  After reviewing the evidence from the pre-trial hearing and the trial, the Court found that the consent form was signed voluntarily and that all the evidence was obtained voluntarily.  <u>Gutierrez</u>, 221 S.W.3d at 687-688.

Whether a party validly consents to a search is a question of fact to be determined from all the circumstances.  <u>Ohio v. Robinette</u>, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)(citing <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 248-249, 93 S.Ct. 2041, 2059 (1973)).  This court must defer to the state court's findings of fact that support its conclusion that the search was voluntary, unless petitioner can produce clear and convincing evidence to the contrary.  <u>Garcia</u>, 454 F.3d at 444.[5]  The evidence in this case was close, but the trial court made a credibility determination in favor of the prosecution.  Although petitioner vehemently disagreed and continues to disagree with the police officers' version of events on the day his house was searched, he has not produced clear and convincing evidence that the search was involuntary.  Accordingly, summary judgment should be entered for respondent on this issue.

---

[5]The "clear and convincing evidence" standard is higher than the "preponderance of the evidence" standard common in civil cases but not as high as "beyond a reasonable doubt."  <u>Travelhost, Inc. v. Blandford</u>, 68 F.3d 985, 961 (5th Cir. 1995)(citing <u>United States v. Rizzo</u>, 539 F.2d 458, 465 (5th Cir. 1976).  The standard has been defined as "that weight or proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case."  <u>In Re Medrano</u>, 956 F.2d 101, 102 (5th Cir. 1992)(citing <u>Cruzan by Cruzan v. Director, Missouri Dept. of Health,</u> 497 U.S. 261, 285, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)).

**F.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

18

A slightly different standard applies when the claims are dismissed on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed both procedurally and on the merits.  If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find the district court's assessment wrong on either ground.  Accordingly, petitioner has not made the necessary showing for issuance of a COA.

## **RECOMMENDATION**

For the reasons described above, it is respectfully recommended that respondent's motion for summary judgment (D.E. 11) be granted.  Petitioner's due process claim should be dismissed as unexhausted and in the alternative denied on the merits.  It is further recommended that petitioner's Fourth Amendment illegal search cause of action be denied on the merits.  Finally, it is recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 9th day of May, 2008.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

19

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 ( 5th Cir. 1996)(en banc).